UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CAROL ROBERTS                                            PLAINTIFF

V.                                              CIVIL ACTION NO. 4:18-CV-96-JHM

COMMONWEALTH OF KENTUCKY et al.                   DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Carol Roberts is proceeding *pro se* and *in forma pauperis* in this action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff initiated this action by filing a document titled "Notice of Prima Facia Case, Declaration Affirmation" (DN 1). She sues twenty Defendants, including the Commonwealth of Kentucky; Governor Matt Bevin; Tom Summers, "Acting as Constituent Services"; the Cabinet for Health and Family Services and some of its officers/employees; and the "Dept of Medicaid Services" and some of its officers/employees. Plaintiff's complaint is not a model of clarity. The Court, therefore, largely will quote from the pleading.

Plaintiff claims that she enrolled in a patient assistance program with a pharmaceutical company, Novartis, around November 10, 2016, and that around December 2, 2016, a Norvartis employee "coerced" her to apply for Medicaid, "which . . . [she] knew . . . [she] did not qualify for, but being forced to jump through hoops, they made [her] perform/do in order to continue with the vital eye drops [she] had been administering to [her] eyes to prevent blindness since 2005." Plaintiff alleges that the Medicaid application "was taken by one [Defendant] Gwen

Ramsey, according to one, [Defendant] Beth Wilson . . . pertaining to an application for Medicaid (ONLY) with the following number 111830857 A.K.A. DFS 17-000851 . . . via phone application[.]" Plaintiff continues, "The inept employee [Defendant] Ramsey, DID NOT, make it know to [me] that [she] was signing [me] up for ANYTHING other than what was requested, or to be put into any other program." Plaintiff states, "I . . . find it ludicrous that the hearing individual [Defendant] Matthew Mooney which has taken nearly a YEAR to render a decision, when he himself is BIASED against [me]."

Later in the complaint, Plaintiff alleges as follows:

> One, Carol Roberts was signed up for QMB,[1] or QMB-1 whatever it is and was done without knowledge or consent OR REQUEST. One day a check shows up from the Social Security office, no note attached, NOTHING to explain what it was or WHY I, one, Carol Roberts was receiving it. One, Carole Roberts immediately was stressed out to the maximum and freaking out with instant fret, depressed, upset stomach and every nerve viber in one, Carol Roberts body was put into stress, whereby one, Carol Roberts am to AVOID at all costs!
>
> Since the check came from Soc Sec, naturally it was assumed that since a receipt of regular Soc Sec had already arrived approximately two weeks prior, assuming that all the rumors were true about a possible government shut down, and assuming that this additional check was sent out early for the following month paid EARLY would be construed as a reasonable assumption. I, one, Carol Roberts made calls to others to see if anyone else had received such. THROWING UP, ensued due to the stress and once somewhat calming down, made a call to the Social Security Office to inquire as to WHY it was sent. One, Carol Roberts was informed that Kentucky was going to start paying my, Carol Roberts' Medicare premiums. WHY, was my, one, Carol Roberts' response, when given this information. Asking the Social Security Office WHO did this to me, one, Carol Roberts, and how does one contact them was the question. I, one, Carol Roberts was given a phone number. I, one, Carol Roberts had been told, due to being low income, the State/Commonwealth of Kentucky was going to pay the Medicare premiums. I, one, Carol Roberts' response was, []look, I, one, Carol Roberts am fearful of cashing said check, because I, one, Carol Roberts, DO NOT want Kentucky coming back to me, one, Carol Roberts, months down the road, stating UH OH, WE MADE A MISTAKE, YOU DO NOT QUALIFY, AND WE'RE GOING TO DROP YOU, AND THEN TAKE

---

[1] Given the context, the Court presumes that QMB stands for a Qualified Medicare Beneficiary program.

THAT MONEY BACK, WHICH EVEN AFTER REASSURANCE, IS EXACTLY WHAT was done. I, one, Carol Roberts, ALSO TOLD THEM, "IF" THAT WERE TO OCCUR, I would be holding all those involved accountable for doing so to me, one, Carol Roberts. SO HERE IT IS. All herein named, HAVE HAD NEARLY TWO YEARS TO REMEDY THIS MATTER, AND HAVE FAILED MISERABLY TO ACCOMPLISH ANYTHING TO PUT ME WHOLE AGAIN. This could have been dealt with in a TIMELY MANNER, but as they've proven, none seem capable of doing the jobs they were hired to do, wherefore they should be FIRED as they were/are irresponsible, neglectful, incompetent and derelict of their duties which is unconscionable, as well as unbelievable. They go about messing with peoples lives as they have done to me, one, Carol Roberts which is criminal AND, and the ordeal has me, one, Carol Roberts, considering CANCELING MY, ONE, Carol Roberts, MEDICARE INSURANCE BECAUSE OF THEIR UNINVITED INVASION AND INTRUSION INTO one, Carol Roberts, LIFE WHICH IS BULLSHIT, in order for one, Carol Roberts to have enough finances to survive on!

Plaintiff reports that she requested a hearing on this matter; that two weeks before the hearing, she asked Defendant Dana Barnes "to send EVERYTHING, which her department and SHE, had done BEHIND MY BACK"; that Plaintiff was in attendance at the hearing by phone as were Defendants Barnes and Mooney; and that because Defendant Barnes had not sent Plaintiff any paperwork, Plaintiff "was forced to STOP the proceeding." Plaintiff reports that another hearing was scheduled; that she had received "some paperwork but NOT ALL of it"; and that, on the new hearing date, Plaintiff "appeared by calling the number, but no one answered and or showed up but ME, one, Carol Roberts. NO EXPLANATION." She continues, "Then I, one, Carol Roberts lost track of what the hell was going to go on, livid at the situation, with more of my, one Carol Roberts' life having been robbed, confiscated, stolen, hijacked, put upon, more stress, and kidnaped. Simply WANTING THE DAMN MATTER OVER!!"

I, one, Carol Roberts cashed that check of reimbursed Medicare premiums, just to have it all taken back a few months later, because of what Gwen Ramsey did, and my, one, Carol Roberts being put into the QMB or QMB-1 and then extracted from it, I, one, Carol Roberts was HIT with increased Medicare premiums a good seven to eight months, BEFORE I, one, Carol Roberts would have had the premium increase on Medicare, if it had

NOT been for the actions of what one, Gwen Ramsey AND the Cabinet for Health and Family Services, as well as Medicaid, did by signing one, Carol Roberts up to begin with.

Furthermore, Dana Barnes, flat out refused to remedy the situation caused by Gwen Ramsey by not transferring me, one, Carol Roberts, for what I, one, Carol Roberts DO QUALITY FOR, ACCORDING TO THE CABINET FOR HEALH AND FAMILY SERVICES, THAT BEING Ql-1 and/or any other program that would have correctly done. . . .

. . . .

Furthermore, as I see it, when I started investigating YOU PEOPLE, come to find out, your program has been going for well over TWENTY YEARS, so as I see clearly now, and ASKED one of the above, HOW COME YOU All DIDN'T SIGN ME, ONE, Carol Roberts UP FOR THIS MEDICARE PREMIUMS PAYMENT SYSTEM BACK IN 2005 when I FIRST applied for Medicaid, for the same Pharmaceutical Company, for the SAME EYE drops I need to keep from going BLIND, to which I, one, Carol Roberts am now without, and of which you/she/they had been MADE AWARE OF AND OF WHICH TOOK YOU All NEARLY A YEAR TO GET ME A NOTICE OF DENIAL, SO THAT, ONE, Carol Roberts, could SEND THE PHARMACEUTICAL COMPANY', PATIENT ASSISTANCE PROGRAM to attain the medically necessary eye drops to prevent BLINDNESS.

Furthermore, I, Carol Roberts attest that since all this began, and all those I, one, Carol Roberts has called raising hell across this Commonwealth/State, I, one Carol Roberts have been STALKED, which has continued whereby license plates, faces, and the like HAVE been captured and given to certain others for my, one, Carol Roberts protection, to whom know what to do with them. You have all made me feel my life is endangered, I do NOT feel safe to go to my doctors office any longer, wherefore I am about out of my eye drops. You have inflicted unmeasureable misery, upon my, one, Carol Roberts' life, with your collective COERCION, TERRORIZING, TORTURE, COLLUSION, INVASION OF PRIVACY, MALFEASANCE, MISPRISOM, DERELICTION OF DUTIES, USURPING OF OATHS OF OFFICE, USURPING THE Kentucky Oaths of Office, CONSPIRACY, Rico Racketeering behaviors, IN MY OPINION. LET A GRAND JURY DECIDE!

In addition, Plaintiff alleges that she has "suffered injury by having to sit straight up for extended periods of time to not only call all over this state seeking assistance in attempts to rectify what has been done to me . . . causing my RA to escalate, wherein affecting my ability to

4

perform daily tasks for myself . . . [my] own daily care, struggling to do so, and in severe physical PAIN[.]" The remaining portion of the complaint consists of unsupported legal assertions, definitions, and cases not tied to any facts.

Among the thirty-seven "COUNTS" Plaintiff lists are deprivation of rights under color of law; conspiracy to interfere with civil rights; Racketeer Influenced and Corrupt Organizations Act (RICO) racketeering; 18 U.S.C. §§ 241, 242, 1952, 1957, 1546, 141,[2] and 1341; 42 U.S.C. §§ 1983, 1985, and 1986; and a number of state-law claims.

As relief, Plaintiff seeks: (1) "all the back Medicare premiums from 2005 to DATE"; (2) Defendants Ramsey and Barnes "FIRED and proof of it and that they no longer are employable with the system of government in ANY capacity as PUBLIC SERVANTS"; (3) "compensation for the pain and suffering, torture, abuse, kidnapping of my life, invasion of privacy, and the other issues raised herein"; (4) for "your collective REFUSAL TO REMEDY THE SITUATION, I, one Carol Roberts am charging you the amount of ($300,000) THREE HUNDRED THOUSAND DOLLARS . . . WHEREAS THOSE FUNDS SHALL BE IN THE FORM OF A BANK CERTIFIED CASHIERS CHECK . . . AND IF THERE ARE ANY TAXES OWED ON THE AMOUNT, YOU SHALL PAY FOR THAT TOO"; and (5) "To be Signed up for whatever program avaialable that DOES pay my, one, Carol Roberts' Medicare Premiums."

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if the Court determines that the action is

---

[2] The Court notes that Title 18 of the United States Code does not contain a § 141.

"frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Allegations under Title 18 of the U.S. Code

Title 18 of the U.S. Code contains provisions of the criminal code. As a private citizen, Plaintiff lacks "a judicially cognizable interest in the prosecution or nonprosecution" of Defendants under these statutes. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Simply put, Plaintiff as a private citizen may not enforce the federal criminal code. *Abner v. Gen. Motors,* 103 F. App'x 563, 566 (6th Cir. 2004); *Am. Postal Workers Union, Detroit v. Indep. Postal Sys. of Am.*, 481 F.2d 90, 93 (6th Cir. 1973); *see also Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) (per curiam) (affirming district court's dismissal of a civil action brought

under 18 U.S.C. §§ 241 and 242); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) (finding no private right of action for alleged violations of 18 U.S.C. § 1341); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (finding no private right of action under 18 U.S.C. §§ 1952 and 1957). Accordingly, Plaintiff lacks standing to maintain the current action insofar as it purports to be brought under these federal statutes, and the Court must dismiss these claims for failure to state a claim upon which relief may be granted.

### *B. RICO*

Plaintiff's bare reference to the RICO statute is insufficient to state a claim. To state a civil RICO claim, a plaintiff must establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiff has not alleged these elements or linked them to the alleged facts. The Court will dismiss this claim.

### *C. § 1983 claims*

In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988).

The complaint is difficult to follow. Nevertheless, in construing the facts in a light most favorable to Plaintiff, it appears that she is alleging that when she applied for Medicaid, she was mistakenly deemed a QMB, eligible for payment of Medicare premiums by the state; that she received and "cashed that check [from the Social Security office] of reimbursed Medicare premiums, just to have it all taken back a few months later"; and that at some point a hearing was

7

held. She does not allege facts showing any intentional deprivation of constitutional rights or interests. The Court concludes that Plaintiff alleges, at most, negligence by state officers/ employees but not facts that rise to the constitutional magnitude. *See Edwards v. Williams*, 170 F. Supp. 2d 727, 734 (E.D. Ky. 2001) ("[N]egligent conduct generally cannot form the basis of a § 1983 violation, and even grossly negligent conduct is insufficient.") (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986) and *Lewellen v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 34 F.3d 345, 351 (6th Cir.1994)).

Furthermore, a state and its agencies as well as state employees sued in their official capacities for damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, a state and its agencies, such as the Department of Medicaid Services and Cabinet for Health and Family Services, may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Finally, state officials and employees sued in their official capacities for damages, are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. at 71; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This

[Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").

For these reasons, the § 1983 claim must be dismissed.

### D. § 1985 and § 1986 claims

To the extent that Plaintiff is attempting to raise a claim under 42 U.S.C. § 1985(3), the Court finds that Plaintiff fails to do so. In order to prove a claim of conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiff must prove: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of the United States. *Johnson v. Hills & Dales Gen. Hospital*, 40 F.3d 837, 839 (6th Cir. 1994). Plaintiff must also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), and "[a] class protected by section § 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994). Further, to state a claim for conspiracy under § 1985(3), there must be specific factual allegations showing the existence of the conspiracy, as well as allegations that the Defendants acted with the specific intent to deprive Plaintiff of equal protection of the law; general, conclusory allegations are not enough. *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972).

In the present case, Plaintiff has not alleged that there existed a conspiracy that was motivated by any racial or other class-based animus, and Plaintiff's allegations concerning a conspiracy are entirely conclusory. Consequently, the § 1985 claim will be dismissed.

A cause of action under § 1986 is based on the violation of § 1985. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation"). As this Court has concluded that Plaintiff has not stated a § 1985 claim, Plaintiff's claim under § 1986 must also be dismissed.

### *E. State-law claims*

Because Plaintiff's federal-law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims.[3] *See* 28 U.S.C. § 1367(c)(3). Those claims will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss the instant action by separate Order.

Date: November 8, 2018

*[signature]*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
4414.005

---

[3] Diversity jurisdiction over any state-law claims does not exist in this action because Plaintiff is a resident of Kentucky as are Defendants. For diversity jurisdiction to exist, there must be "complete diversity between the plaintiffs and defendants, i.e., 'diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.'" *Medlen v. Estate of Meyers*, 273 F. App'x 464, 469 (6th Cir. 2008) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in *Owen*)).